IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |
|---|---|
| CMA CGM (AMERICA), LLC,<br>      Plaintiff,<br><br>            v.<br><br>RLI INSURANCE COMPANY, *et al.*,<br>      Defendants. | *<br>*<br>*<br>*<br>*<br>*   Civil Action No. 12-cv-03306-AW<br>*<br>*<br>*<br>* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OPINION

Pending before the Court is Defendants' Motion to Dismiss for Improper Venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. Doc. No. 9. In the alternative, Defendants move to transfer this case to the Houston Division of the Southern District of Texas pursuant to 28 U.S.C. § 1406(a). *Id.* The Court has reviewed the motion papers and concludes that no hearing is necessary. Loc. R. 105.6 (D. Md. 2011). For the reasons stated below, the Court will GRANT-IN-PART Defendants' Motion and transfer this case to the Houston Division of the Southern District of Texas.

I.  **BACKGROUND**

Plaintiff brings this action in diversity seeking a declaratory judgment with respect to a contract of insurance, as well as damages from Defendants for breach of contract, violations of the Texas Insurance Code, and breach of the duty of good faith and fair dealing. Plaintiff CMA CGM (America), LLC (hereinafter CMA) is a company organized under the laws of New Jersey with its principal office in Virginia, and is a citizen of Virginia for diversity purposes. Defendant RLI Insurance Company is an insurance company organized under the laws of Illinois and is a citizen of Illinois for diversity purposes. Defendant Home State County Mutual Insurance

Company (hereinafter Home State) is an insurance company organized under the laws of Texas and is a citizen of Texas for diversity purposes.

On October 21, 2003, Hector Aguirre, an independent contractor for the motor carrier Empire Truck Lines, Inc. (Empire), sustained injuries when a container on a CMA chassis that Aguirre was driving broke during departure from an Empire facility.  At the time of the accident, Empire was the named insured in a policy of insurance issued by the Defendants (hereinafter, the "Policy" or "Defendants' Policy").  Doc. No. 1-1.  The Policy contained a Truckers Uniform Intermodal Interchange Uniform Endorsement (hereinafter, the "UIIE-1" or the "endorsement").  *Id.* at RLI00017.  Pursuant to this endorsement, the Defendants agreed to furnish certificates of Empire's insurance to the Intermodal Association of North America (IANA) in Maryland.[1]

Empire operated the CMA chassis pursuant to a Uniform Intermodal Interchange and Facilities Access Agreement between Empire, CMA, and IANA (hereinafter, the "Agreement" or the "UIIA").  Doc. No. 12-1.  At all pertinent times, Empire and CMA were members of IANA, and the Agreement outlined the responsibilities and obligations between Empire and CMA.  The Agreement included the following provision:

> Venue: Any action which may be brought to enforce or interpret this Agreement shall be brought in a trial court of competent jurisdiction as follows:
> a. As to questions of interpretation or enforcement of the Agreement, at the location of the principal place of business of the Intermodal Association of North America;

Doc. No. 12-1 at 5.  It is not disputed that IANA's principal place of business is in Maryland.

---

[1] The certificates are attached as Exhibit B to Plaintiff's Complaint, Doc. No. 1-2, and Defendants do not appear to dispute that the certificates of insurance were issued to IANA.  The record is somewhat unclear on this point, however.  The UIIE-1 endorsement states that the certificates would be issued to the Intermodal Transportation Association (ITA) in Riverdale, Maryland.  Doc. No. 1-1 at RLI00017.  The ITA subsequently merged with another entity to create the Intermodal Association of North America (IANA).  *See* Doc. No. 12-2.  However, the certificates of insurance attached to the Complaint name the Uniform Intermodal Interchange of Greenbelt, Maryland as the Certificate Holders.  Doc. No. 1-2.  The relationship between the Uniform Intermodal Interchange and IANA is not clear from the record.

2

On or about April 1, 2005, Aguirre brought suit against CMA and Empire in the district court of Harris County, Texas.  As a result of this underlying action, CMA paid Aguirre $225,000 and cross-claimed against Empire for indemnity pursuant to the UIIA Agreement.  CMA claims that Empire's indemnity obligation runs from the motor carrier, Empire, to the equipment provider, CMA, under Clause F.4 of the Agreement.  Doc. No. 12-1 at 4.  The dispute between CMA and Empire remains in litigation, and an appeal is currently pending in the First Court of Appeals for the State of Texas.  Doc. No. 12 at 3–4.  In the instant litigation, CMA claims that Home State and RLI undertook to insure Empire's contractual indemnity obligation by issuing the UIIE-1 endorsement in Defendants' Policy.  *See* Doc. No. 1-1 at RLI00017.  Accordingly, CMA claims it is an additional insured under Defendants' Policy.

Determining whether the UIIA Agreement is an insured contract and whether CMA is an additional insured under Defendants' Policy are tasks for the court in which venue is proper.  The only matter before this Court is Defendants' Motion to Dismiss for Improper Venue or, in the alternative, to transfer this case to the Houston Division of the Southern District of Texas.

## II.     ANALYSIS

CMA argues that venue is proper in the District of Maryland pursuant to 28 U.S.C. § 1391(b)(2), which provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  Although § 1391(b)(2) contemplates that venue might be proper in more than one district, "[e]vents or omissions that might only have some tangential connection with the dispute in litigation are not enough.  Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute."  *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994).

A plaintiff is obliged only to make a prima facie showing of venue in order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(3). *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012). In assessing whether there has been a prima facie showing of proper venue, the court must view the facts in the light most favorable to plaintiff. *Id.* Where a court determines that a case has been filed in the wrong venue, it "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. §1406(a).

The parties do not dispute the following facts: (1) Defendants' Policy was issued from Home State's Texas address to Empire's Houston, Texas address, Doc. No. 1-1 at RLI00001; (2) Home State and Empire are both Texas residents, Doc. No. 1 ¶ 3, Doc. No. 1-4 at 1; (3) The underlying action for which CMA seeks indemnity from Empire was filed in Houston, Harris County, Texas, Doc. No. 1 ¶ 8; (4) The plaintiff in the underlying action, Hector Aguirre, is a resident of Harris County, Texas, Doc. No. 1-4 at 1; (5) The accident that led to the underlying action occurred in Harris County, Texas, Doc. No. 1-4 at 2; (6) CMA filed a cross-claim against Empire in the underlying action in Harris County, Texas, Doc. No. 12 at 3; (7) The Harris County, Texas court entered judgment against CMA in the underlying action, Doc. No. 13-1; and (8) the third appeal of the underlying action is now pending before the First Court of Appeals for the State of Texas, Doc. No. 12 at 4.

It is also not disputed that Texas law applies to interpretation and enforcement of Defendants' Policy, and none of the parties to the instant litigation are residents of Maryland. CMA's claims in this case are dependent upon the terms of Defendants' Policy, which was executed and negotiated in Texas between Texas residents and contains no venue provision. Furthermore, the underlying litigation was brought in a Texas court by a Texas resident for an accident that occurred in Texas. In light of these facts, the Court concludes that a substantial part

4

of the events or omissions giving rise to CMA's claims against Defendants did not occur in Maryland, and therefore venue is not proper in this district.

CMA argues that venue is proper in Maryland because a provision in the UIIA Agreement, a contract allegedly insured by Defendants' Policy, requires litigation under that Agreement to be brought at IANA's principal place of business, which is in Maryland. Doc. No. 12-1 at 5. In support, CMA cites *Costco Wholesale Corporation v. Liberty Mutual Insurance Company*, 472 F. Supp. 2d 1183 (S.D. Cal. 2007), which addressed a motion to transfer venue from the Southern District of California to the Eastern District of Pennsylvania for convenience pursuant to 28 U.S.C. § 1404(a). Plaintiff suggests that the *Costco* court upheld venue in the Southern District of California because the agreement that triggered the endorsement was negotiated in San Diego.

There are several problems with CMA's reliance on *Costco*. First, the *Costco* court faced a § 1404(a) motion to transfer for convenience, and was not tasked with addressing a motion under Rule 12(b)(3) or § 1406(a). Second, the *Costco* court denied the motion to transfer in part because the underlying agreements were not negotiated or executed in the proposed transferee venue and because it was not clear whether the state law of the proposed transferee venue would govern interpretation of the agreements. *Id.* at 1190–91. In this case, however, it is not disputed that Defendants' Policy was negotiated and executed in Texas and is governed by Texas substantive law. Third, although the court noted that the case had "some connection" to the Southern District of California, it did so largely to reject the defendant's argument that plaintiff was engaged in forum shopping. *Id.* at 1192. Indeed, the *Costco* court seemed to acknowledge that the connections to the Southern District of California were "tenuous." *Id.* at 1191. Finally, unlike in *Costco*, there is no allegation in the instant litigation that the UIIA Agreement which allegedly triggered the endorsement was negotiated or executed in Maryland, which makes the

5

connection even more tenuous.  Regardless of the conclusions in *Costco*, however, this Court is not persuaded that the Agreement's Maryland venue provision has more than a tangential relationship to the instant litigation given that Defendants were not parties to the Agreement.

CMA nevertheless argues that venue is proper in this district because Defendants' conduct is "closely related" to the Agreement and it was "foreseeable" that its Maryland venue provision would be invoked against Defendants.  Several circuits have agreed that "[i]n order to bind a non-party to a forum selection clause, the party must be closely related to the dispute such that it becomes foreseeable that it will be bound."  *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998) (internal quotations omitted); *see also Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988).  CMA also emphasizes recent decisions by courts in the Southern District of New York, which, relying on *Lipcon*, noted that "[a] non-party is 'closely related' to a dispute if its interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct."  *Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, No. 07 Civ. 9580(HB), 2008 WL 4833001, at *8 n.6 (S.D.N.Y. Nov. 5, 2008) (quoting *Cuno, Inc. v. Hayward Indus. Prods., Inc.*, No. 03 Civ. 3076, 2005 WL 1123877, at *6 (S.D.N.Y. May 10, 2005) (quoting *Lipcon*, 148 F.3d at 1299)).

The Court concludes that the foreseeability analysis does not support a finding that venue is proper in this district.  Any obligation Defendants may have to indemnify CMA would be based on the UIIE-1 endorsement in Defendants' Policy, but that endorsement only makes reference to Defendants' indemnity obligations, not to a forum selection provision in the allegedly insured Agreement.  *See* Doc. No. 1-1 at RLI00017.  Few of the cases cited by CMA even address insurance coverage, and none of them warrant a conclusion that these non-signatory

6

Defendants should have foreseen being bound by the UIIA Agreement's Maryland venue provision.[2]

For example, in *NC Contracting, Inc. v. Munlake Contractors, Inc.*, No. 11-cv-766-FL, 2012 WL 5303295 (E.D.N.C. Oct. 25, 2012), the North Carolina court addressed a provision in a construction subcontract between the plaintiff and one of the defendants which provided that venue for legal action would only be proper in a Missouri state court. *Id.* at *1. The court granted defendants' Rule 12(b)(3) motion to dismiss, concluding that the non-signatory defendants could invoke the underlying contract's forum selection clause because their conduct was "closely related" to the signatory defendant's contractual relationship with plaintiff. *Id.* at 7 (citing *Lipcon*, 148 F.3d at 1299). *NC Contracting* does not support a finding that venue is proper in the instant case, as the Agreement which contains the Maryland venue provision is *not* the underlying subject of litigation. Furthermore, *none* of the Defendants in the instant case are signatories to the Agreement containing the venue provision.

CMA also cites *Diesel Props*, 2008 WL 4833001, which, like *NC Contracting*, does not address interpretation of an insurance contract. The court in *Diesel Props* concluded that a non-signatory, third-party defendant could invoke an agreement's forum selection clause because the signatory defendants' causes of action against the third-party defendant depended on a theory that the signatory plaintiffs and the third-party defendant were actually a single entity. *Id.* at *8 n.6. The court also relied on the fact that the third-party defendant, the parent company of the plaintiffs, was "closely related" to the plaintiffs such that the enforcement of the forum selection

---

[2] Plaintiff argues that it is axiomatic that a court ruling on an action brought pursuant to the Declaratory Judgment Act may be required to construe the "insured contract" as well as the policy of insurance. *See, e.g.*, *Cowan Sys., Inc. v. Harleysville Mut. Ins. Co.*, 457 F.3d 368, 376 (4th Cir. 2006); *Capital Envtl. Servs., Inc. v. N. River Ins. Co.*, 536 F. Supp. 2d 633, 642 (E.D. Va. 2008). The fact that this case may require interpretation of the Agreement does not compel the Court to enforce its venue provision where Defendants were not parties to the Agreement.

clauses was foreseeable by virtue of that relationship.  *Id.*  These circumstances are simply not present in the instant litigation.

CMA's reliance on *Allianz Insurance Company of Canada v. Cho Yang Shipping Company, Ltd.*, 131 F. Supp. 2d 787 (E.D. Va. 2000), is also misplaced.  In *Allianz*, the plaintiff insurer, as subrogee of the owner of damaged cargo, sued the carrier of the cargo on a bill of lading contract.  The court held that the plaintiff insurer was subject to the forum selection clause in the bill of lading even though it was not a party to the contract: "[I]t was foreseeable that claims brought under the bill of lading would be governed by its forum selection clause.  [The plaintiff insurer] filed suit on the bill of lading, and thereby accepted its terms, including the forum selection clause contained therein."  *Id.* at 792.  The insurers in the instant litigation are defending the action and have not made any affirmative subrogation claims, so the *Allianz* case does not support a conclusion that Defendants could have foreseen that Maryland would be a proper venue for litigating a dispute under their Policy.

Indeed, other cases that have relied upon the foreseeability test are factually distinct from the instant matter.  In *McNair v. Monsanto Company*, 279 F. Supp. 2d 1290 (M.D. Ga. 2003), the court addressed a motion to transfer venue pursuant to § 1404(a).  It was not disputed in *McNair* that a majority of the individual plaintiffs had entered into a license agreement with defendants which contained a forum selection clause providing that disputes would be litigated in Missouri.  *Id.* at 1295.  The court determined under the foreseeability analysis of *Lipcon* that some non-signatories were bound to the Missouri forum selection clause while others were not bound.  *Id.* at 1302–06.  The court nevertheless transferred the case to Missouri based on a lengthy analysis of the § 1404(a) factors.  *Id.* at 1308–14.  *McNair* has little application to the instant case, however, where *none* of the Defendants are parties to the Agreement containing the venue

provision. Furthermore, the Court is addressing a motion to dismiss under 12(b)(3) or, in the alternative, to transfer under § 1406(a), not a motion to transfer for convenience under § 1404(a).

In another case cited by CMA, *Mozingo v. Trend Personnel Services*, No. 10-4149-JTM, 2011 WL 3794263 (D. Kan. Aug. 25, 2011), the court held that non-signatory plaintiffs were bound to forum selection clause in an employment agreement because they were third-party beneficiaries under the agreement. *Id.* at *6–7. Given their status as third-party beneficiaries and their invocation of other parts of the agreement, the court held that the plaintiffs could not avoid enforcement of the clause on the sole grounds that they were not signatories. *Id.* at *7. Defendants in the instant litigation have not claimed status as third-party beneficiaries, and accordingly, *Mozingo* does not support CMA's position that venue is proper in this district.

Finally, CMA emphasizes that pursuant to the UIIE-1 endorsement of Defendants' Policy, certificates of insurance were issued on Empire's behalf to IANA in Maryland. *See* Doc. No. 1-1 at RLI00017; Doc. No. 1-2. CMA cites *Choice Hotels International, Inc. v. Madison Three, Inc.*, 23 F. Supp. 2d 617, 622 (D. Md. 1998), apparently for the proposition that venue is proper in Maryland because Defendants performed their contractual duties in this district when they issued the certificates of insurance. First, the Court notes these certificates of insurance did not amend or alter the underlying terms of Defendants' Policy. *TIG Ins. Co. v. Sedgwick James of Wash.*, 184 F. Supp. 2d 591 (S.D. Tex. 2001) ("It is well-established under Texas law that when a certificate of insurance contains language stating that the certificate does not amend, extend, or alter the terms of any insurance policy mentioned in the certificate, the terms of the certificate are subordinate to the terms of the insurance policy."). Second, although the *Choice Hotels* court considered plaintiffs' performance of its contractual duties in Maryland as a factor in the § 1391 analysis, it also relied on the fact that the agreement under which the suit was brought was formed in Maryland. *Id.* In the instant case, CMA brings suit under Defendants'

9

Policy, which was negotiated and executed in Texas. Accordingly, *Choice Hotels* does not support a conclusion that venue is proper in this district simply because the certificates of insurance were issued here.[3]

In closing, the Court holds that a substantial part of the events or omissions giving rise to CMA's claims against Defendants did not occur in Maryland. Although the allegedly insured contract in this case contained a Maryland venue provision, Defendants are not parties to that Agreement, and the existence of the venue provision is tangential to the instant litigation. While venue is not proper in this district, the Court concludes that dismissal is not an appropriate remedy. In the interest of justice and pursuant to 28 U.S.C. § 1406(a), the Court will transfer this case to the Houston Division of the Southern District of Texas, where venue is proper under 28 U.S.C. § 1391(b)(2) and § 124(b)(2).

### III.  CONCLUSION

For the foregoing reasons, Defendants' Motion will be GRANTED-IN-PART, and the case will be transferred to the Houston Division of the Southern District of Texas. A separate Order will follow.

  February 13, 2013                                            /s/
       Date                                           Alexander Williams, Jr.
                                                      United States District Judge

---

[3] Defendants also argue that CMA waived its right to enforce the UIIA Agreement's Maryland venue provision when it filed a cross-claim in the Texas state court action against Empire. However, CMA contends in its opposition brief that its claim against Empire was a compulsory counterclaim. *See* Doc. No. 12 at 3. Having found that Maryland is not the proper venue, the Court does not need to address Defendants' waiver argument.